# United States Court of Appeals
## For the First Circuit

No. 12-2273

UNITED STATES OF AMERICA,

Appellee,

v.

GERALDO GONZALEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Thompson, Selya and Lipez,

Circuit Judges.

Jane Elizabeth Lee on brief for appellant.
John P. Kacavas, United States Attorney, and Seth R. Aframe,
Assistant United States Attorney, on brief for appellee.

November 20, 2013

**SELYA, Circuit Judge.** This appeal tees up a question that has divided our sister circuits: does Federal Rule of Criminal Procedure 32, entitled "Sentencing and Judgment," apply to a sentencing proceeding that follows the revocation of a term of supervised release? We decline the opportunity to take a swing at answering this question. Discretion is often the better part of valor, and courts should not rush to decide unsettled legal issues that can easily be avoided.

Taking this prudential path, we bypass the Rule 32 question and address the appellant's claims on the merits. After careful consideration, we affirm the sentence imposed.

We start with the travel of the case. On April 18, 2006, a federal grand jury sitting in the District of New Hampshire charged defendant-appellant Geraldo Gonzalez with possession of cocaine with intent to distribute. See 21 U.S.C. § 841(a)(1). After accepting a guilty plea, the district court sentenced the appellant to a 30-month term of immurement plus 3 years of supervised release.

The appellant served his prison sentence but, during his ensuing supervised release, flunked drug tests administered by the probation department. Following a hearing, the district court revoked his term of supervised release, sentenced him to serve 6 months in prison, and imposed a new 30-month supervised release term.

Once again, the appellant served his prison sentence without apparent incident. Withal, his second supervised release stint proved to be no more successful than his first. We offer a decurtate account of four incidents that collectively inform the appellant's fall from grace.

- **Nashua Incident.** In December of 2011, the appellant was eyeing a group of three women at a nightclub in Nashua, New Hampshire. The women asked the appellant to move away. When he refused, the women attacked him and he responded in kind. The police arrived and broke up the altercation.

- **Portsmouth Incident.** On January 13, 2012, the appellant and his quondam girlfriend were at a bar in Portsmouth, New Hampshire. According to the woman, the appellant struck her several times. At her instigation, a criminal complaint was filed in state court charging the appellant with simple assault, criminal threatening, and witness tampering. At the time of the later revocation hearing, these charges remained pending and unresolved.

The appellant says that no such assault transpired and that the events limned in the criminal complaint are fabrications. Despite his protestations of innocence, the appellant's probation officer filed a notice of violation based on the Portsmouth incident and the related charges. A federal warrant issued for the appellant's arrest.

- **Lawrence Incident.** While attempting to execute this warrant, United States Marshals spotted a car in Lawrence, Massachusetts. They believed that the appellant was driving the vehicle. They tried to effect a stop but, after a short chase, the driver eluded them. The car was later found abandoned; its contents included shooting targets and two egg-shaped balls filled with a white powder.

- **New Jersey Incident.** On February 22, 2012, while driving in New Jersey, the appellant fell asleep at the wheel and wrecked his car. When police responded to the crash, the appellant furnished false identification. The officers were not bamboozled; they ferreted out the appellant's true identity and arrested him for possession of a simulated document. After a brief stay in a New Jersey jail, the appellant was transferred to federal custody.

At a hearing held on October 9, 2012, the appellant pleaded guilty to three supervised release violations: failure to make required daily phone calls to receive drug-testing instructions; commission of a new state criminal offense (possession of a simulated document); and leaving the jurisdiction without permission of either the court or the probation officer. The court asked questions about the two counts pertaining to the New Jersey incident, and also commented about the Nashua, Portsmouth, and Lawrence incidents. At the end of the hearing the court, surveying the tableau created by descriptions of the four

-4-

incidents, revoked the extant term of supervised release. It then sentenced the appellant to a flat 18-month incarcerative term (without any additional period of supervised release). The appellant responded by prosecuting this timely appeal.

In this venue, the appellant attacks his sentence on two grounds. First, he asserts that the district court violated Federal Rule of Criminal Procedure 32(i)(3)(B) by failing to make rulings on controverted issues of fact raised at sentencing. Second, he asserts that the court's factfinding vis-à-vis the Nashua incident was not only clearly erroneous but also adversely affected his sentence.

The appellant gives the heaviest emphasis to his Rule 32 argument. At the outset, we note that it is uncertain whether Rule 32 applies at all to revocation of a term of supervised release. The Eleventh Circuit has stated that "[i]t is clear from the language of Rule 32 that it does not apply to revocation hearings." United States v. Jackson, 417 F. App'x 872, 874 (11th Cir. 2011) (per curiam); accord United States v. Hernandez-Gonzalez, 163 F. App'x 520, 522 (9th Cir. 2006). In the same vein, some courts have declined to import Rule 32's grant of a right of allocution into supervised release revocation proceedings, reasoning that to do so would render Rule 32.1, entitled "Revoking or Modifying Probation or Supervised Release," superfluous. See, e.g., United States v. Waters, 158 F.3d 933, 944 (6th Cir. 1998) ("There is no indication

that Congress intended [the] additional requirements [of Rule 32] to apply to supervised release sentencing."). However, other courts have held that Rule 32 and Rule 32.1 are designed to work together in a complementary, not mutually exclusive, fashion.[1] See, e.g., United States v. Patterson, 128 F.3d 1259, 1261 (8th Cir. 1997) (per curiam); United States v. Rodriguez, 23 F.3d 919, 921 (5th Cir. 1994).

We need not try to cut a passable swath through this thicket. Assuming for argument's sake, favorably to the appellant, that Rule 32 does apply to revocation proceedings, the appellant's claim nonetheless fails.

Before embarking on an explanation of our reasoning, we pause to say a few words about the standard of review. We normally review de novo a sentencing court's compliance vel non with the strictures of Rule 32. United States v. González-Vélez, 587 F.3d 494, 508 (1st Cir. 2009). Here, however, the government contends that the appellant's failure to articulate a particularized objection below constrains our analysis to plain error. We need

---

[1] This specific conflict with respect to the right of allocution has now been resolved by a change in the rules. See United States v. Carruth, 528 F.3d 845, 846 (11th Cir. 2008) (per curiam). The advisory committee notes that accompany the 2005 amendments to Rule 32.1 point out that Rule 32.1(b)(2), as amended, now explicitly provides for allocution rights at revocation hearings. Fed. R. Crim. P. 32.1 advisory committee's note (2005 amendments).

not resolve this contretemps: even under the more appellant-friendly lens of de novo review, the claim of error is unavailing.

The claim of error focuses specifically on Rule 32(i)(3)(B). This provision states that, at sentencing, the court "must — for any disputed portion of the presentence report or other controverted matter — rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." For present purposes — and without deciding the issue — we treat the revocation report as the functional equivalent of a presentence report.

It is apodictic that, for the requirements of Rule 32(i)(3)(B) to attach, the defendant must first raise a factual dispute on which the district court can rule. See United States v. McGee, 529 F.3d 691, 700 (6th Cir. 2008) (explaining that "facts must be sufficiently controverted to trigger the sentencing court's fact-finding duty" (internal quotation marks omitted)). A defendant may fulfill this prerequisite by a written objection to the facts set forth in a presentence report, see Fed. R. Crim. P. 32(f)(1), or, if there is good cause for the delay, by a speaking objection at the sentencing hearing, see Fed. R. Crim. P. 32(i)(1)(D). There is nothing in the record to indicate that the appellant pursued either avenue.

The only relevant writing submitted by or on behalf of the appellant to the district court prior to the revocation hearing was a sentencing memorandum (the Memorandum). The Memorandum did not contain any objection to the facts limned in the revocation report. Nor has the appellant identified anything in the Memorandum that plausibly could be so construed.

By the same token, during the course of the revocation hearing the appellant did not dispute any of the circumstances of the Nashua, Portsmouth, or Lawrence incidents.[2] To the precise contrary, defense counsel specifically advised the court of the appellant's decision not to contest or otherwise offer conflicting evidence regarding those three incidents.

The colloquy that occurred at the revocation hearing bears out this conclusion. As to the Nashua incident, the prosecutor indicated that he had no reason to question the appellant's account. As to the Portsmouth incident, defense counsel lamented the fact that the revocation report referred to the incident at all, but agreed that there were no "procedural or constitutional infirmit[ies]" arising out of the revocation report's description of that incident. As to the Lawrence incident, defense counsel acknowledged that he "kn[e]w that's

_____

[2] We limit our inquiry to these three incidents because, in his brief on appeal, the appellant has not raised even the slightest question concerning the district court's treatment of the facts surrounding the New Jersey incident.

something that [the court] would consider because it's in a report and it's not good for" his client; thus, he was "not going to litigate that."

The appellant has a fallback position. He insists that the court's very discussion of the Nashua, Portsmouth, and Lawrence incidents transformed them into "controverted matter[s]" for the purpose of Rule 32(i)(3)(B). This broadside distorts the district court's remarks. To the extent that the district court mentioned the Nashua, Portsmouth, and Lawrence incidents, it was to question whether the undisputed facts surrounding those incidents affected the appropriateness of a further term of supervised release. The court mused that, regardless of the exact cause, the appellant found ways to get himself into "jams constantly." The ubiquity of these "jams" cast a negative light on his ability to be supervised adequately.[3]

Seen in this light, "it [was] the significance of the activities, not the activities themselves, that [was] in question." United States v. Saxena, 229 F.3d 1, 10 (1st Cir. 2000). The law is clear that the court was free to draw inferences from the undisputed facts without tripping over Rule 32(i)(3)(B). In this regard, Rule 32(i)(3)(B) "imposes an obligation upon the court to

---

[3] The court's perspective on the Nashua incident is illustrative. With respect to that incident, the court noted that any way it was sliced, the appellant had thrust himself into an altogether avoidable situation that morphed into a physical altercation requiring police involvement.

resolve contested <u>facts</u> that are material to a sentencing decision, but that obligation does not extend to opinions and conclusions" drawn by the court from unchallenged facts. <u>Id.</u> at 11 (emphasis in original); <u>see</u> <u>United States</u> v. <u>Garcia</u>, 954 F.2d 12, 19 (1st Cir. 1992) (sentencing court's reliance on presentence report proper when appellant couched objections "exclusively as interpretations of the facts, not as challenges to the underlying facts themselves").

Relatedly, the appellant claims that he did not understand why the revocation report discussed matters that the government did not intend to pursue. This concern obviously goes to the mere inclusion of the statements, not to any doubts about their factual accuracy. <u>See</u> <u>United States</u> v. <u>Melendez</u>, 279 F.3d 16, 18 (1st Cir. 2002) (per curiam). Consequently, Rule 32(i)(3)(B) is not implicated.

That ends this aspect of the matter. We find that, regardless of which standard of review applies, the appellant has not made out a viable claim under Rule 32(i)(3)(B).

This leaves one last claim of error. The appellant suggests that the district court's factfinding with respect to the Nashua incident was faulty. This suggestion can be swiftly rebuffed.

As we already have explained, the government chose not to contest the appellant's account of the Nashua incident. The court

cannot have erred in finding facts regarding the Nashua incident when it did not find facts at all but, rather, merely accepted the parties' agreed version of the facts. See, e.g., United States v. Torres-Vázquez, 731 F.3d 41, 45-46 (1st Cir. 2013) (finding no error in district court's reliance on factual account when parties were in agreement about the facts).

We need go no further. For the reasons elucidated above, the sentence is

**Affirmed**.

-11-